### COMMONWEALTH *vs.* JOHN WILLIAMS.

The court, in which an indictment is pending, may, at the request of the district attorney or other public prosecutor, and for good and sufficient reason, associate other counsel with him to aid in the trial of the case, but not to exercise any control or direction of the same.

On the trial of an indictment for breaking and entering a building and stealing therefrom, a number of burglarious tools and implements, found together in the possession of the defendant, at the time of his arrest, may be brought into court

Commonwealth *v*. Williams.

and exhibited to the jury, although some of them only, and not the residue, are adapted to the commission of the particular offence in question.

In an indictment under the Rev. Sts. *c*. 126, § 14, it was alleged, that the defendant broke and entered "the city hall of the city of Charlestown;" this is a sufficient averment, that the property of the building alleged to be broken and entered is in the city of Charlestown.

In an indictment under the Rev. Sts. *c*. 126, § 14, for breaking and entering and stealing in any of the buildings therein mentioned, the amount or value of the property stolen is immaterial; and it is a sufficient allegation as to the stealing, if there is a larceny properly and technically charged of any of the goods alleged in the indictment to be stolen.

Since the passing of the statute of 1847, *c*. 13, for defining "the time of night time in criminal prosecutions," it is sufficient to allege, generally, that an offence was committed in the night-time, without designating the particular hour of the night; and by such allegation is to be understood the period of night-time as defined in that statute.

THE defendant was one of several defendants, who were tried in the court of common pleas, before *Mellen*, J., upon an indictment in which they were charged with breaking and entering the treasury of the city of Charlestown, and stealing therefrom certain gold coin, and sundry bank bills, enumerated in the indictment.

The indictment set forth, that the defendants, " on the twelfth day of November, 1847, with force and arms, at Charlestown, in the county of Middlesex aforesaid, the city hall of the city of Charlestown, in said county, there situate and erected for public uses, to wit, the transaction of the municipal business of said city of Charlestown, in the night-time of said day, unlawfully and burglariously did break and enter, and ten pieces of gold coin, current within this commonwealth, by the laws and usages thereof, called eagles, of the value of ten dollars each, ten other pieces of gold coin current within this commonwealth, by the laws and usages thereof, called sovereigns, of the value of five dollars each, and sundry bank bills amounting together to the sum of five hundred dollars, and of the value of five hundred dollars, of the goods, moneys and chattels of the said city of Charlestown, then and there, in the city hall aforesaid, being found, feloniously did steal, take and carry away, in the city hall aforesaid, against the peace," &c.

At the trial, on motion of the district attorney, Charles R.

Train, esquire, the court permitted George Farrar, esquire, a counsellor of this court, to aid in conducting the cause on the part of the commonwealth ; and Mr. Farrar did, accordingly, under the direction of the district attorney, open the case to the jury, and examine and cross examine several of the witnesses.

The district attorney offered evidence to show, that certain tools and implements, being burglars' tools, to wit, pistols, shotted colts, skeleton keys, key-bits, an instrument called a safe-borer, and a screw-wrench, were found in the possession of the defendant, at the time of the arrest for the offence set forth in this indictment ; although it was admitted by the district attorney, that some of the tools were not used in committing the offence charged in the indictment, and that some portion of them, to wit, the shotted colts and the screw-wrench, might not have been so used by the defendant. The court admitted this evidence, and permitted the tools so found to be exhibited to the jury.

The district attorney, having suggested that certain portions of the stolen property were seized at the time of the arrest of the defendant, and were at the time of the trial held in the custody of the officer by whom the arrest was made, offered the treasurer of the city of Charlestown as a witness, and proved that since the stealing, as alleged in the indictment, the treasurer had had the property so stolen from the treasury allowed him on the settlement of his account with the proper officers, and that his accounts were settled in conformity with such allowance. The court admitted the treasurer as a witness.

The defendants being convicted, Williams alleged exceptions to the above order and rulings.

*B. F. Butler,* (with whom was *J. G. Abbott,*) for the defendant.

*C. R. Train,* district attorney, for the commonwealth.

DEWEY, J. We perceive no sufficient grounds for setting aside this verdict. It is undoubtedly the policy of our system of criminal jurisprudence, that the district attorney, or

other public officer having official charge of the criminal department, should have the active superintendence and management of all criminal cases, on the trial of the same before the jury. There are obvious considerations for such a course of proceeding. As a general rule, this is required, and the conducting of the case before the court and jury is to be confined to the public prosecutor. But exceptions may occur to this rule, arising from peculiar circumstances applicable to particular cases, which would justify the court in associating with the public prosecutor, at his request, additional counsel to aid him in the conducting of a cause. When this takes place, it must be at the request of the district attorney, and under some stringent reason, arising in the particular case; and the control and direction of the case must be with the public prosecutor. There is nothing in the present case to show, that the counsel thus associated with the district attorney received any pecuniary compensation, from any private individual, for the services he rendered; and we are to presume, this being a motion addressed in some degree to the sound discretion of the presiding judge, that proper reasons existed for granting the request of the district attorney, that Mr. Farrar should be associated with him in the trial of this case. While we deem it our duty to say, that such additional counsel is not, under ordinary circumstances, to be permitted, yet, when sanctioned by the court, under the limitations suggested, it will not furnish any sufficient ground for setting aside a verdict.

The second question arises upon the exceptions taken to the admission of the evidence, as to the finding of certain tools and implements in the possession of the defendant, and the exhibition of those articles to the jury upon the trial. The objection urged against the admission of this evidence arises from the circumstance that only a part of these tools and implements are such as might apparently have been used in the alleged burglary. As we understand the facts stated in the bill of exceptions, they import nothing further than this, that certain tools and implements were found in

the possession of the defendant, and were brought into the court room in mass and exhibited to the jury, as well those that might probably have been used in the alleged burglary, as other instruments not adapted to the commission of this particular offence. The latter being however parcel of the larger quantity, found in the possession of the defendant, at the time of his arrest, and a part of the articles thus found being of a character that might properly have been submitted to the jury, and relied upon as evidence applicable to the case, the admission of evidence as to the finding of the whole parcel, and the exhibition of the same to the jury, were not objectionable. Without sanctioning the admission of evidence merely tending to show that the defendant had in his possession instruments adapted to the commission of other crimes, we think we may sustain the present ruling, as justified by the character of a portion of the tools and implements, thus found and exhibited as a mass or entire parcel. The exceptions are therefore overruled.

A motion was afterwards filed in arrest of judgment, in this court, on the ground of the insufficiency of the indictment : 1. Because the building alleged to be broken is not therein stated to be the property of any person ; 2. Because it is not stated, that the time, in which the offence is alleged to have been committed, was the night-time, in which, by law, such offence may be committed, nor is the hour of the day or night alleged, at which the offence was committed ; and, 3. Because there is no proper and sufficient description of the property alleged to be stolen.

This motion was argued by the same counsel, and the opinion of the court was given at the April term, in Middlesex, 1849.

Dewey, J. The first ground relied upon for arresting the judgment raises the question of the sufficiency of the indictment, in reference to the allegation of property or ownership of the building alleged to have been entered. The indictment charges, that the defendants broke and entered " the city

hall of the city of Charlestown." The objection is, that there is no averment of property in the city of Charlestown. To sustain the objection, reference was made by the counsel for the defendants to the forms of indictments for larcenies, and for other criminal offences affecting personal property. If these were proper tests, the averment in this indictment would be found to be defective. The ownership of personal chattels is stated more fully ; the usual form being, that they are "the goods and chattels of A. B. ; " or sometimes, "the property of A. B." But a reference to the best books of precedents in criminal pleading will fully sustain the distinction between the modes of describing real and personal property, in reference to the ownership of such property. While the latter is described as has been stated, a very general, if not universal, mode of describing the ownership of real estate, is similar to that adopted in the present case. This is peculiarly so in indictments for arson, burglary, and malicious mischief. 2 Chitty, C. L. 1101 ; Archbold, C. P. 385, 390, (5th ed.) ; Wharton's Precedents, 88.

This was the form of indictment in the case of the *Comm'th* v. *Taylor*, 5 Bin. 277, for breaking and entering a house, and in the cases of the *Comm'th* v. *Squire*, 1 Met. 258, and *Comm'th* v. *Harney*, 10 Met. 422, for malicious burning of buildings. The present indictment does sufficiently allege the ownership of the property, and that it was a public building.

It is then further contended, that no larceny was sufficiently charged, and that inasmuch as the statute offence is that of breaking into a public building and committing a larceny therein, both these offences must be technically charged. The alleged defect in the indictment, in this respect, is in the allegation of the felonious taking "of sundry bank bills amounting together to the sum of five hundred dollars" of the goods and chattels of the city of Charlestown. But the indictment also alleges a larceny by the defendants "of ten pieces of gold coin, current in this commonwealth, called eagles, of the value of ten dollars each, and ten other pieces

of gold coin, called sovereigns, of the value of five dollars each;" and these larcenies, it is conceded, are alleged with technical accuracy. If the defendant had successfully maintained his position, that no breaking and entering of a building was well charged, by reason of a defect as to the allegation of ownership of such building, this question as to the sufficiency of alleging a larceny as "of sundry bank bills amounting together to the sum of five hundred dollars" would have been of importance, in reference to the value of the property stolen, as it would affect materially the punishment to be awarded, if the conviction and sentence were for simple larceny only. But, in reference to the offence, upon which this indictment is found, and for which the defendant is to be punished, the amount of property stolen does not enter into the offence, or affect the statute punishment. It is the breaking and entering in the night-time a public building and stealing therein, that is the subject of punishment under the statute.

It is well settled, that upon an indictment charging a larceny of various distinct articles of property, some of which are technically described, and others not so, and a general verdict of guilty is found by the jury, the insufficiency of the description as to certain articles has no other effect than to strike them out of the indictment, and the verdict is to be applied to the whole property which is properly and sufficiently charged to have been stolen, and for the larceny of such property the punishment is to be awarded.

We have not found it necessary, therefore, to consider or decide upon the question of the sufficiency of the charge of larceny of the bank bills. Independent of that charge, there is a larceny technically and properly set forth, in this indictment. This, with the further allegation, that the defendant did in the night-time unlawfully and burglariously break and enter the city hall, brings the case within the provisions of the Rev. Sts. *c.* 126, § 14.

Another point was taken but not much relied upon, that this indictment is defective in not particularly alleging that

Commonwealth *v.* Williams.

the breaking and entering were between the period of one hour after sunset and one hour before sunrising the next following morning, or at least for not specifying some certain hour of the night. The allegation in the indictment is, that the defendant broke and entered the city hall on the twelfth day of November, 1847, " in the night-time of said day." It has been considered proper and necessary, until the statute of 1847, *c.* 13, and such are the usual precedents, to state some particular hour of the night, in which the burglary was alleged to have been committed. The reason for this seems to have been, that one might with a felonious intent have broken and entered a building, at a time properly called in popular language *night-time,* and yet not have committed the crime of burglary; the time in which that offence can be committed being not so far extended as to embrace the night-time, in the ordinary use of that word, but a period when the light of day had so far disappeared, that the face of a person was not discernible by the light of the sun or twilight. But the statute just cited has defined " night-time " for all purposes of criminal proceedings. Whenever " night-time " is now used in an indictment, as descriptive of the time of the commission of an offence, it is to be understood of the night-time as defined by this statute. The allegation, that the breaking and entering were in that night-time, is virtually an allegation that the offence was committed during the time between one hour after sunsetting, on one day, and one hour before sunrising on the next day. The indictment is sufficient in this respect. The result is, therefore, that, upon all the grounds taken, the motion in arrest of judgment must be overruled.