Jorgensen v. Robinson Seed Co.

ALFRED JORGENSEN, APPELLEE, V. J. C. ROBINSON SEED
COMPANY, APPELLANT.

FILED JULY 31, 1924. No. 22877.

1. **Sales: CONTRACT: ENFORCEMENT.** Defendant contracted with plaintiff to furnish him seed corn to plant, plaintiff to care for, harvest, store, and deliver the matured crop of corn, shelled, to defendant at North Loup not later than the following January, the crop raised to be in a named condition. If not merchantable as field corn at time of delivery, then defendant could refuse to take it; if merchantable as such, then it would pay plaintiff the market price on delivery. Defendant was then to have time to test it as to germinating qualities (provided a prior test had not been had). If it tested 90 *per centum*, then defendant was to pay plaintiff $1.75 a bushel. *Held*, that, on delivery, defendant owed plaintiff the market price at North Loup, and·if it stood the test, or had stood the test, in addition to the market price. the difference between that price and $1.75 a bushel; and *held*, that the corn after delivery at North Loup was at the risk of the defendant; and *held*, that as the contract set out in the opinion did not provide a specific time for testing the corn as to its germinating qualities, the test made before delivery was sufficient, and the entire amount became due and payable on delivery; and *held*, that the contract set out in the opinion made the agent the managing agent of defendant company, and legal service of summons upon him, as such, was legal service on the company. Comp. St. 1922, sec. 8577; *Kron v. Robinson Seed Co.*, 111 Neb. 147.

2. **Trial: REFUSAL OF INSTRUCTION.** It is elementary that error cannot be predicated on the refusal of the court to give a tendered instruction, where the court of its own motion properly

instructed the jury on the points covered by the instruction offered and refused.

3.  Pleading: WAIVER. Where a petition states facts which amount to a pleading of waiver, it will be considered as such, even though the word waiver is not used.

APPEAL from the district court for Valley county: BAYARD H. PAINE, JUDGE. *Affirmed.*

*Davis & Davis* and *Brown, Baxter, Van Dusen & Ryan,* for appellant.

*Munn & Norman, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ.

THOMPSON, J.

Plaintiff prosecutes this action to recover from the defendant $1,737.75 and interest since March 15, 1921, for 993 bushels of Sanford Flint corn, sold and delivered to defendant by him, under and in accordance with a seed corn contract, attached to and made a part of his petition. He alleges performance of all conditions precedent, and that he was ready and desired to deliver the corn in November, 1920, but owing to defendant's lack of sacks it requested him to wait; that in the meantime defendant called for fair samples of the corn to be placed in sacks by the plaintiff, and delivered to its agent at North Loup, to be forwarded by him to defendant at Waterloo for test; that he complied with the request, and the test was made by defendant; that it then notified him as follows, "The said test made showed the corn O. K. and that it was acceptable;" that the corn was then in good condition, and remained so until delivered to defendant at North Loup, March 9 to 15, inclusive, and received by its agent; that at the time he demanded the market price for field corn at North Loup, as per the contract, but at defendant's request waited; that afterwards defendant's agent, acting for defendant, drew a draft in his favor for the 993 bushels at $1.25 a bushel,

field corn market price, which draft was never paid. He therefore prays judgment for the agreed price of $1.75 a bushel.

The contract, so far as is necessary for the purpose of this opinion, is contained in defendant's brief, and is as follows:

"First party agrees to furnish second party stock seed sufficient to plant the acreage of vine seeds and corn hereinafter described; and second party agrees to properly prepare the ground and plant said seed in a proper and careful manner and in season, and to carefully care for and cultivate the crops springing from said seed, and to harvest the same in season, and to deliver the entire merchantable increase or crop therefrom on or before the dates hereinafter stated to the first party at his seed house at North Loup, Nebraska.

"Said seeds and corn,  *  *  *  when delivered by second party, shall be in a bright, well-cured and merchantable condition, the seeds retaining their natural color, and the corn to be well sorted at the sheller,  *  *  *  and all field corn to have germinating quality which will test at least 90 per cent.   When field corns are delivered the market elevator price at the point of delivery shall be due and the balance to be due as soon as a proper test for germination has been made.  *  *  *  Provided, that in case said vine seeds or corn are not in merchantable condition, as above provided, at the time of delivery, first party may, at his option, reject any part or all of such seeds or corn.  *  *  *

"There shall be planted the acreage and pounds of seeds, for which prices shall be paid as follows:

| Acres. | Variety No. | Date of Delivery. | Price. |
|--------|-------------|-------------------|--------|
| Thirty | Field Corn, Sanford Flint | Delivery on or about January 1, 1921. | $1.75 per bu. 56 lbs. |

"The compensation of second party for the performance of his part of this agreement shall be such sum as may be derived from all the marketable vine seeds and corn so delivered under this contract at the prices above specified,

and less any expense herein provided to be deducted therefrom, in case there shall be any such expense, and less a quantity of seed of like character and amount as that furnished by the first party for planting. &ast; &ast; · &ast;

"Witness the signatures of the parties hereto the day and date above stated.

"The J. C. Robinson Seed Co.,<br>"By J. F. Earnest."

The service of summons was had by serving on Earnest at North Loup, as defendant's managing agent. Defendant appeared specially, and objected to the jurisdiction of the court, alleging by way of motion and affidavits that Earnest was not its managing agent. Counter affidavits were filed by the plaintiff. Motion overruled. Defendant presents the ruling on this motion as a reversible error.

Defendant answered, pleading the jurisdictional question raised in its special appearance, and admitting the contract and the incorporation of the defendant; that plaintiff had furnished the samples and it had tested same for germinating qualities, "and they were found to conform to the requirements of the contract." It is then alleged that the samples were not "a fair average sample of the seed corn so grown, but for the purpose of deceiving defendant and in the effort to obtain the acceptance by the defendant of the corn so grown, selected samples of only the very best of such corn which he specially prepared to the end that it would apparently conform to the terms of the contract as being in a merchantable condition for seed purposes;" that plaintiff knew the corn he contracted to sell the defendant was for seed purposes; that when the corn was received by it at Waterloo it was "not in accordance with the contract requirements;" that it was compelled to and did sell the corn at auction, and received $427, which it tendered to the plaintiff, and brought the same into court for that purpose; and closed its answer by a general denial of plaintiff's allegations except those specifically admitted.

Plaintiff for reply interposed a general denial, except

wherein the answer admitted facts set forth in the petition.

Case tried to a jury, verdict and judgment for plaintiff for $1,737.75, with interest as prayed. Motion for a new trial overruled, and defendant appeals.

As we construe the contract it made Earnest the defendant's managing agent. *Kron v. Robinson Seed Co.*, 111 Neb. 147. He executed the contract for and on behalf of the company, using his own discretion as to the person or persons with whom he would contract, and for what defendant would contract. The matured crop was to be delivered at defendant's place of business at North Loup, of which he had charge; he was to inspect and pass judgment on the corn at delivery, and pay plaintiff the field corn market price at the time at North Loup, ascertaining and determining the price as between the parties. Thus, it will be seen that Earnest was an agent at this particular place, invested with the general management of the business of this domestic corporation, and clothed with the exercise of judgment, discretion, determination, conduct, and control of its affairs, and was in fact its managing agent. The evidence by way of affidavits also supported the court's ruling. Its holding is in harmony with our decisions running from *Porter v. Chicago & N. W. R. Co.*, 1 Neb. 14, to *Kron v. Robinson Seed Co., supra,* and error was not committed.

Instruction No. 13, given by the court on its own motion, is complained of by defendant, for the reason that the case was without pleading or evidence calling for an instruction on waiver. The defendant at the trial, and here, contends that the fact that it received the corn was not a waiver of its right to inspect after delivery, and the fact that it had tested samples before delivery, was not a waiver of its right to test after delivery.

The plaintiff insists that under the contract the defendant had a right to but one test of the corn for germinating purposes, and that, as it tested the corn before delivery, it waived its right to test afterward.

The petition alleges that a test as to the germinating

qualities was had at defendant's request, prior to the delivery of the corn. Defendant admits that it called for samples, received the same, examined them and approved them. Then at the trial, as we glean from the evidence, and from the presentation of the case in this court by the parties, this question of waiver was before the court and became a factor in the trial. This was the theory upon which the case was heard, and must be followed by us in determining the question presented. It is considered by us, and we so find, that prejudicial error was not committed by reason thereof.

The instructions given, as a whole, were favorable to the defendant, and fairly covered its every contention. The court did not err in refusing to give instructions 5 and 6, requested by defendant.

Defendant urges, in substance, that the verdict is contrary to the evidence and the weight thereof. The evidence, up to and including the delivery on March 9 to 15, 1921, clearly preponderates in favor of the plaintiff. No question is raised as to the manner of planting, maturing, gathering, or housing the crop, or as to its condition up to and including the time of delivery at North Loup. While the contract, as will be seen, does not specifically call for a test of the corn before delivery, defendant asked for fair samples of the corn to be sent to it in December, 1920; January 1, 1921, being the last date of delivery under the contract. Earnest furnished sacks for that purpose. The samples were placed therein, and forwarded by Earnest to the Waterloo office for test. Defendant made the test and reported, as alleged in plaintiff's petition, viz., "that the said test made showed the corn O. K., and that it was acceptable." This is admitted in defendant's answer, wherein it states that it had tested the samples for germinating qualities, "and they were found to conform to the requirements of the contract."

Thus, it will be seen that the issue raised by reason of this test is not that the samples did not test up to each and every requirement for seed corn purposes contained in the

contract, but, it is urged, that the samples were not fairly representative of the corn in bulk, and were designedly selected with the intent to deceive and mislead the defendant to its injury. This being the issue, let us apply the evidence. Kron, a third person, was given the sacks by agent Earnest, and requested to obtain the samples. He did so, both as to his own corn and that of plaintiff. He swears he did so fairly and with impartiality, as he selected the ears from the crib in different places indiscriminately, and also testifies, in substance, that the corn left was in every way as good as the sample. In this he is corroborated by other witnesses, whose evidence amply sustains his contention.

As we construe the contract, the entire merchantable crop was to be delivered to the defendant's seed house in North Loup, on which delivery, if it was not then refused as unmerchantable, plaintiff was to be paid the market elevator price at that point for field corn. This delivery is final so far as plaintiff is concerned. The defendant, thereafter, if he has not previously tested, may test for germination, within a reasonable time. If the corn, when so tested, does not show 90 *per centum* germinating quality, then the market price, which under the contract was to be paid at delivery, pays for the corn. If, however, it does show or has shown a 90 *per centum* germinating quality, then the defendant is to pay plaintiff the difference between the market price which should have been paid at the time of delivery, and the $1.75 a bushel named in the contract. Defendant could not reject the corn after it received it at North Loup, for any reason contained in the contract, for after receiving the corn it was bound to pay at least the field corn market price. If it desired to reject the corn for the reason that it was not in a merchantable condition, it should do so at the time of delivery. Otherwise, the option is waived. This contract does not provide for a Waterloo test, forfeiture or option. Nor is there any evidence of a general custom, of which plaintiff had knowledge, that the corn was to be tested at Waterloo after delivery

at North Loup. The test, if subsequent to delivery, is as to germination only, and, as we conclude, must be had within a reasonable time. While there is evidence showing a subsequent test at Waterloo, there is a lack of evidence proving or tending to prove the care given the corn after it was received at North Loup, or while on its way to Waterloo. If the corn, when it reached Waterloo, was in the condition some of defendant's witnesses testified it was, and when delivered at North Loup was in the condition shown by plaintiff's evidence, then something not shown must have happened to it, either at North Loup after delivery, or while on its way to Waterloo. This evidence was submitted to the jury under proper instructions, and they found that the corn complied with the contract requirements, by finding for plaintiff. There is ample evidence to sustain this finding, and the same should not, and will not, be disturbed.

Other assignments of error presented have been considered by us; but, in view of our conclusion, we do not find it necessary to discuss them.

The judgment is                              AFFIRMED.

Note—See Corporations, 14A C. J. p. 807, sec. 2910—Pleading 31 Cyc. p. 60; Sales, 35 Cyc. pp. 102, 227 (1925 Ann.), 344; Trial, 38 Cyc. p. 1711.