DEAN LIAKAS, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA, DEFENDANT IN ERROR.

72 N. W. 2d 677

Filed October 28, 1955. No. 33733.

*Eugene D. O'Sullivan* and *Eugene D. O'Sullivan, Jr.,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

In a prosecution by the State in the district court for Douglas County Dean Liakas was convicted of burglary, and for that felony was sentenced to serve a term of 8 years in the State Penitentiary. As plaintiff in error, defendant presents for review the record of his conviction. We hereafter refer to the plaintiff in error as defendant.

The first three assignments of error made by the defendant relate to the giving of instruction No. 9 by the trial court on its own motion, the contention being

that by the giving of this instruction the defendant was denied due process of law under Article 1, section 3, of the Constitution of the State of Nebraska and section 1 of the Fourteenth Amendment to the Constitution of the United States.

The defendant also assigns as error that the possession and occupancy of a burglarized building must be proved as charged by evidence beyond a reasonable doubt, and failure to do so amounts to a denial of due process of law to the defendant as guaranteed to him under the Constitution of the State of Nebraska and the Constitution of the United States. The latter assignment of error will be discussed first, the first three assignments of error second, and other assignments of error as appear in the opinion.

The information, insofar as necessary to be considered here, charged: "* * * that on or about the 30th day of May * * * (1953) Dean Liakas * * * did willfully, maliciously, and forcibly, and with the intent to steal property of value, break and enter into a certain building located at 3552 Leavenworth Street, in the City of Omaha, in said county and state, which building is leased and occupied by Ben Perelman, Robert Perelman, and Harold Perelman, doing business as Ben Perelman Grocery, * * *."

To charge a statutory offense, the information or complaint must contain a distinct allegation of each essential element of the crime as defined by the law creating it, either in the language of the statute or its equivalent. Dickens v. State, 139 Neb. 163, 296 N. W. 869; Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868.

Where a statute states the elements of a crime, it is generally sufficient, in an information or indictment, to describe such crime in the language of the statute. Pandolfo v. State, 120 Neb. 616, 234 N. W. 483; Sedlacek v. State, supra.

If the information or indictment apprises the defend-

ant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense, it meets the fundamental purposes of an information or indictment, as well as constitutional requirements. Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111; Sedlacek v. State, *supra.*

Under section 28-532, R. R. S. 1943, if the information for burglary sufficiently identifies the building allegedly entered, an allegation of ownership is not necessary in order that an offense under the statute be stated. Sedlacek v. State, *supra.*

The specific ownership of a building involved in a crime of burglary is not an essential element of the offense. An allegation of the ownership as such is immaterial save for the purpose of identifying the property, where the crime allegedly was committed, as not the property of the accused, and to show that the defendant had no right to enter the premises. See Sedlacek v. State, *supra,* and cases cited therein.

With reference to the evidence on this subject, the witness Ben Perelman testified that he and his son Robert run the business; that the business was located at 3552 Leavenworth Street, on the northwest corner of Thirty-fifth Avenue and Leavenworth Streets; that he occupied the whole building; and that there were things of value inside the store. In addition, this witness, described the store as being 60 feet by 100 feet, with the east side facing Thirty-fifth Avenue and the west side facing a parking lot, and at the back there is an alley. He described the front or south part of the store, the nature of the construction, the glass and the entrance and other details relating to the premises. From a review of the evidence, the property is clearly identified, its occupancy and possession shown, and the disassociation of the right of the defendant to occupy the premises or to enter the premises at the time the alleged burg-

lary was committed. This assignment of error cannot be sustained.

We next consider the first three assignments of error summarized above.

Section 25-1214, R. R. S. 1943, provides: "A witness may be interrogated as to his previous conviction for a felony, but no other proof of such conviction is competent except the record thereof."

The defendant asserts that there is a difference between the defendant as a witness and an ordinary witness for the reason that he is more than a witness and is possessed of certain constitutional and statutory rights which the ordinary witness does not have. On cross-examination the defendant was asked if he had been previously convicted of a felony. He answered "Yes, sir." And to the question "How many times?" he answered "Three." It is contended that the defendant was required to give evidence against himself which could be used in the proof of an habitual criminal charge.

In Brown v. State, 111 Neb. 486, 196 N. W. 926, it is said that by statute, a person charged with crime shall, at his own request, but not otherwise, be deemed a competent witness. "If he becomes a witness * * * he should be treated as any other witness. Heldt v. State, 20 Neb. 492; Comstock v. State, 14 Neb. 205 * * *."

In Sulley v. State, 119 Neb. 783, 230 N. W. 846, the court held: "The statute providing that 'a witness may be interrogated as to his previous conviction for a felony' does not limit the inquiry to a single conviction or prevent a proper inquiry as to the number of his convictions."

This brings us to instruction No. 9 given by the trial court on its own motion as follows: "You are instructed that it is the law of the State of Nebraska that any witness in any case may be asked on cross examination as to his previous conviction of a felony, as was done in this case when the defendant, Dean Liakas, was being cross examined. In this connection you are instructed

that under the law of Nebraska any previous conviction of a felony may be considered by the jury for the sole and only purpose of affecting the credibility of Dean Liakas, the defendant in this case. Credibility is defined to mean the weight and credit the jury should give the testimony of such a witness—the worthiness of belief of such testimony, and in no way may be considered by the jury as proof of the crime charged in the Information."

The defendant requested the following instruction No. 6 which was refused: "You are instructed that it is the law of the State of Nebraska that any witness in any case may be asked on cross-examination as to his previous conviction for a felony, as was done in this case, when Dean Liakas was being cross-examined, and in this connection you are instructed that under the law of Nebraska any previous conviction of a felony may be considered by the jury for the sole and only purpose of affecting the credibility of Dean Liakas, the defendant in this case, and you are further instructed that credibility is defined to mean, which means the weight and credit the jury should give the testimony of such a witness—the worthiness of belief of such testimony, and in no way may be used by the jury as proof of the substantive act charged in the Information."

Reviewing instruction No. 9 given by the trial court on its own motion and instruction No. 6 requested by the defendant, it is apparent that the instruction given by the trial court is substantially identical with the one requested by the defendant.

It is elementary that error cannot be predicated on the refusal of the court to give a tendered instruction, where the court on its own motion properly instructed the jury on the points covered by the instruction offered and refused. Jorgensen v. Robinson Seed Co., 112 Neb. 573, 199 N. W. 855. See, also, Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643; Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677.

Instructions are to be considered together to the end that they may be properly understood, and, when so construed, if as a whole they fairly state the law applicable to the evidence, error cannot be predicated on the giving of the same. Lovings v. State, 158 Neb. 134, 62 N. W. 2d 672, certiorari denied 348 U. S. 850, 75 S. Ct. 77, 99 L. Ed. 41.

The court did not err in giving instruction No. 9, as contended for by the defendant.

At the conclusion of all the evidence the defendant moved for a dismissal of the case, one of the reasons being the insufficiency of the evidence to prove the offense as charged.

In addition to the evidence heretofore set out, the record discloses that on the front of the building, facing south, there is about 30 feet of glass in three partitions, each being 11 feet high and 9 feet wide. The corner of the building is cut off, and a door which faces the southeast is the main entrance to the store. At the rear of the building there is a door that leads into the store where most of the deliveries are made. Across this door on the inside there is an iron grille. Next to this door is a window about 2½ feet by 5 feet, and there are iron bars across this window on the outside of the building. On the inside is a window screen which opens up and down. The screen was locked and all entrances to the building were securely locked at the time in question. The front of the store is lighted with neon advertising and other lights; there is a light inside the store; and Leavenworth Street is well lighted, making it easy to see inside of the store and to check the same.

At about 1:40 a. m., May 30, 1953, officer Reese and his partner, officer Gentleman, were checking store buildings in the vicinity of Thirty-fifth Avenue and Leavenworth Street. Officer Gentleman was driving the car. They proceeded up Leavenworth Street and were using the spotlight on the car. In checking Perelman's store, officer Reese saw a break in the window

on the east side adjacent to the door of the store. The bars had been moved or pulled apart. He stepped out of the car, went toward the front of the building, leaned against the wall, and looked in through the door. At a distance of 20 feet he saw a man in the store look around the corner. He shouted to his partner that there was a man inside. The man darted back, and this officer headed toward the front of the store. He was running south along the east side of the building, approximately 10 feet from the corner, when he heard a crash and glass breaking. When he arrived at the corner, the glass was still scattering in the street. He rounded the corner on the south side of the store and saw a man running west on Leavenworth Street about 35 to 40 feet away. The officer yelled for the man to stop, then he ran after him. When the man reached the southwest corner of the Perelman store he angled off northwest across a parking lot beside the store, and when he reached the rear of the buildings on the east side of Thirty-sixth Street, the officer lost sight of him momentarily. He heard a horn honk on Thirty-sixth Street and the screeching of brakes, and saw a man spread in front of the lights of a car. The man was not struck by the automobile. He gave further pursuit of the man and could see that he had gone north and was angling toward Thirty-seventh Street. There was a group of boys who were also running north on Thirty-seventh Street. When the officer came around the corner of the first house north of Leavenworth Street on Thirty-seventh Street, the man was lying on his face in a yard. The man had on one glove and was holding a glove and a steel punch in his hand. The gloves and steel punch, also referred to in the testimony as a pinch bar, were the property of the defendant. The officer handed his gun and the glove to one of the lads standing there, and pulled the man up. After the man was up he was evidently sick from running, and was taken back to the

Perelman store. The officer identified the man as the defendant in this case.

Officer Gentleman corroborated the testimony of officer Reese with reference to what Reese did in the immediate vicinity of the Perelman store. Officer Gentleman looked around the neighborhood for cars that might have been parked and which could have been used by the intruder. Across the street on the east side of Thirty-fifth Avenue, about 10 feet north of the Perelman store, he found a 1942 Ford sedan parked with the keys in the ignition. No one attempted to start this car, but it was towed to the police station. He found a kit of tools and a sack of money under the front seat of the car. He testified that there was a large break in the first window west of the main entrance to the store with an opening large enough to get through without difficulty.

A police sergeant arrived at the Perelman store and went through a hole in the plate glass window of the store. His examination disclosed that there were horizontal bars across the window on the east side, one of which had been pried and pulled downward leaving a method of entrance for a man to get through. The trunk in the back of the car was not locked, but difficult to open. There was a box of carpenter tools in the trunk and some tools lying outside of the box which were selected, taken, and introduced in this case as exhibits and which will be discussed later in the opinion.

After the defendant was taken to police headquarters, at about 8 o'clock the next morning he was questioned by Captain Clinchard who testified that he questioned the defendant with reference to the circumstances surrounding a burglary of the Perelman store; that the defendant "indicated" to him that he had entered the store through the back part of it; that he had seen the officers when they arrived; that he grabbed a jug of wine and threw it through the front window; that he had the pinch bar when he was apprehended; and that it belonged to him, as well as the other tools. This officer

took no statement, but made a memorandum as to what the defendant told him, and refreshed his memory from that. There was no objection to this testimony.

Officer Gallagher testified that the window adjacent to the door on the east side of Perelman's store, the small window with bars across the bottom half, had the middle bar pried clear down and the window had been forced up on the inside; and that on the window frame or below the glass there were regular bar marks, wide marks made by a pinch bar of some kind.

Ben Perelman testified that he received a call from the police that his store had been broken into. When he arrived at the store the front window was knocked out and glass was lying all over the sidewalk. The window on the east side of the building disclosed that the bars were pulled open, one practically pulled out, and it looked like a bar of some kind had been stuck under it and pried up. The screen was pushed in, the glass was broken, and the lock on the window forced. He further testified that nothing was taken from the store, but a half gallon jug of wine was broken.

Three high school boys and their dates were in the vicinity of Thirty-fifth Avenue and Leavenworth Street at the time in question. The boy driving the car stopped at the traffic signal at Thirty-sixth Street. He heard a crash, and when the signal changed he pulled across the street, stopped, and parked the car which was headed west on Leavenworth Street. They saw a man cross Thirty-sixth Street in front of a car going north which had stopped and its brakes screeched. This man was coming from between two houses, and was running south. The boys yelled at him, and he turned around and ran west. The boys gave chase, ran across a vacant lot at the corner of Thirty-seventh and Leavenworth Streets, and caught him in the front yard of a house. The boy in the lead pushed him and he went down on his face and stayed there. As this boy testified: "Well, I grabbed ahold of him and just gave him a push for-

ward * * * and he was so tired that he went forward and layed down. He just stayed there." Officer Reese came up and took the man into custody.

The defendant's testimony was to the effect that he borrowed a 1942 Ford car from his friend Bud Tyrell who was a bartender at the Seven Seas cocktail lounge located at 1510 Harney Street. His reason for borrowing the car was to haul materials to a house he was building at Seventy-sixth and Cass Streets in Omaha upon which he was doing most of the work. He had no car of his own at the time. The car was in poor mechanical condition. At about 9:30 p. m., on May 29th, the defendant drove this car and parked it in the vicinity of the Seven Seas cocktail lounge. He went into the cocktail lounge and talked to people therein who appeared as witnesses in his behalf and testified to seeing him there. The defendant stayed in the cocktail lounge until about 1:10 or 1:15 a. m., May 30th, when he started home. He had difficulty in getting the car started. He lived at 827 South Twenty-ninth Street, half a block south of Twenty-ninth and Leavenworth Streets. He was proceeding on Leavenworth Street to the Motor Inn garage located on Turner Park Boulevard, to get his car fixed. This garage was closed. He then thought of the Blackstone garage, as he worked at the Blackstone Hotel as an upholsterer. From the evidence it appears the Blackstone garage is used for storage for General Motors products, and apparently is not the type of garage where the defendant could have had his car fixed. He turned right after he got to the top of the hill, and the motor of the car sputtered and died. He was required to stop the car at Thirty-fifth Avenue and Jones Street. He was unable to get the car started, so he parked it along the east curb of Thirty-fifth Avenue, the same street on which the Perelman store is located. He tried to pry the gears so they would mesh. He used a small bar, the one he had when he was apprehended. He then went on foot south on the east side of Thirty-

fifth Avenue to Leavenworth Street. He thought the Cherry Garden garage might be open as it had been an all-night garage. He crossed Leavenworth Street on Thirty-fifth Avenue and went west on Leavenworth Street for two blocks. The garage was not open. He then cut across Thirty-seventh Street from the south to the north side of Leavenworth Street intending to go back to the car. He had on his person $400 and the pinch bar with which he tried to start the car. He walked from Thirty-seventh and Leavenworth Streets eastward on the north side of Leavenworth Street. When he was in front of the first house west of Thirty-sixth Street, about a block from Perelman's store, he heard brakes screeching and saw a man run across a lot and another man stop practically in front of a car, but kept going. There was another car parked approximately in front of a vacant lot about 20 feet ahead of him, headed west. Three men got out of this car, and the defendant ran. He denied that he ran between two houses or across the street in front of any car. He testified that he thought these men were after him and he started to go into a house but was unable to do this as the house was dark. He ran in front of other houses. At the end of the block he ran northwest across a lot up to a house that had a light burning and went into the front yard. This was described as the first house north of Leavenworth Street, facing west on Thirty-seventh Street. He was overtaken, grabbed, turned around, struck in the stomach, and pushed, falling face downward. He could not get up. These men were standing around him. In a couple of minutes officer Reese came up, put his foot on the defendant's back, kicked him hard on the left side, used language which the defendant said he could not repeat, and told him to stand up. The officer grabbed him by the shoulders and under the arms and pulled him up. He was not able to stand up. He was taken into custody, put in a police car, taken to the police station, and booked for the Perelman burglary. He

denied that he committed the burglary, was in the grocery store, fled from the store, or had anything to do with the crime charged. He admitted the ownership of the tools found in his car and introduced into evidence as exhibits.

The applicable rule is: "The credibility of witnesses and the weight of their testimony are for the jury to determine in a criminal case, and the conclusion of the jury cannot be disturbed unless it is clearly wrong." Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349. See, also, Hoffman v. State, 160 Neb. 375, 70 N. W. 2d 314.

The trial court properly denied the motion of defendant to dismiss the case on the ground of the insufficiency of evidence.

The defendant contends the trial court erred in admitting in evidence, over the defendant's objections, exhibits Nos. 7 through 12, and each of such exhibits. The exhibits admitted in evidence consisted of a small hammer, a sledge hammer, a large crowbar, two chisels, and a small crowbar. These tools were found loose in the trunk of the car, together with a box of other tools which were not offered in evidence. However, all the tools were admitted to be the property of the defendant which he was using in the building of a house. The car, which the defendant had borrowed and of which he had possession on May 30, 1953, at the time of the commission of the burglary, had the ignition keys in it and was parked across the street a short distance from the Perelman store and north of the window that had been entered on the east side of the building. The State's evidence places the defendant inside of the Perelman grocery store. The evidence shows that the east window through which entrance had been gained showed indentations that could have been made by a pinch bar, and that the defendant at the time he was apprehended had a pinch bar in his possession. Two police officers testified that tools such as these exhibits are commonly used in burglaries.

In Phillips v. State, 157 Neb. 419, 59 N. W. 2d 598, the court said: "Where the evidence shows that a defendant was in the vicinity at the time a burglary was committed with the aid of burglarious tools, such possession may be admitted to show that defendant had the means to ·commit the offense in the manner that it was committed. It is a circumstance which the jury may consider."

There are cases too numerous to mention holding that where an accused is identified as having been at or near the scene of a crime about the time of its commission evidence showing that he owned, possessed, or had access to any articles with which the crime was or might have been committed is competent. See, State v. Montgomery, 175 Kan. 176, 261 P. 2d 1009; State v. Wayne, 62 Kan. 636, 64 P. 69; Commonwealth v. Williams, 56 Mass. 582; People v. Clinton, 78 Cal. App. 451, 248 P. 929; State v. Campbell, 7 N. D. 58, 72 N. W. 935; 22 C. J. S., Criminal Law, § 611, p. 931, § 712, p. 1207; 20 Am. Jur., Evidence, § 246, p. 239, § 273, p. 260, § 401, p. 361; Annotation, 143 A. L. R. 1199.

We find no error prejudicial to the defendant under the circumstances here existing.

For the reasons given in this opinion, the judgment of the district court should be and is affirmed.

AFFIRMED.