[Crim. No. 626.   Fourth Dist.   June 20, 1944.]

THE PEOPLE, Respondent, v. O. K. JIM MASON et al., Appellants.

Joseph Seymour for Appellants.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants were charged with theft in taking a sum of money from the person of John Parks in violation of section 484 of the Penal Code. A jury found them guilty and each has appealed from the judgment.

The defendants were living in a house at Coachella, where Mason's mother had formerly resided. They spent considerable time in the evenings at a place of entertainment in Indio known as "Brownie's Cafe." Parks was a sergeant in the army and stationed at Camp Young. On September 2, 1943, he spent most of the evening in this cafe. He had just received two months' pay and had on his person sixteen new

$10 bills with a little other money. During the evening he drank some beer. About ten o'clock he was ready to return to camp. When he went outside he saw the defendants seated in a car. He talked to Mason, who agreed to take him out to the camp for $1.00. At that time he had $161.50 in his pockets, $160 in new $10 bills. He entered the front seat of the car with Mason, and Mrs. Jones was in the rear seat. Almost immediately he went to sleep or became unconscious.

Instead of going to Camp Young Mason drove to Coachella and stopped the car in a dark place beside a park. About 11 p. m. a deputy sheriff and two military policemen came along in a car. The military police asked to see the soldier's pass. They had to rouse him and take him out of the car. They at first thought he was drunk but decided he was not. Their testimony as to his condition strongly indicates that he had been drugged. He finally produced his pass which was in good order. The deputy sheriff asked the defendants what they were doing there and Mason replied that he was taking the other two to their homes. Mrs. Jones told one of the officers that Mason was her husband and told another that Parks was her husband. The officers demanded some identification from Mrs. Jones and she offered to produce it if they desired to go to her home which was near by. The officers and the two defendants then proceeded to the house where the two defendants lived.

Shortly after the others left, Parks walked a couple of blocks to a lighted portion of Coachella. He then discovered that all of his money was gone. He reported his loss to the officers who immediately began to try to locate the defendants. In the meantime the defendants had again gone to Indio, stopping at one or two other places.

An officer was sent to watch the house where the defendants lived. About two o'clock a. m. the defendants returned to their home with another soldier in the car. In looking through the defendants' car the deputy sheriff found three bottles of wine. Mason said the wine belonged to the soldier and the soldier said it did not. A little later, the sheriff found a black-jack in the car. The defendants were taken to the sheriff's office in Indio. Mason denied that he had taken any money from Parks or knew anything about it. The officers then searched Mason and found $160 loose in his left hip pocket, consisting of fifteen new $10 bills and two worn $5.00 bills.

They also found $22 in bills and some change in his front pants pocket. Mason first said he had acquired this money by working for the Southern Pacific. A little later he was asked if he had taken this money from Parks and he said that he had not "but that Cleo Jones had taken the money and given it to him to keep." One of the officers wrote up a statement to this effect and Mason signed it. A few minutes later this officer had a conversation with the defendant Jones in which she said she had not taken any money from Parks, but when asked if she had seen any money taken from Parks she refused to give any information concerning anything that had taken place during that evening. A little later, she told the officers that Mason had taken the money from Parks.

The deputy in charge of the sheriff's office at Indio had a conversation with Mason the next afternoon. Mason first denied that either he or Mrs. Jones had taken any money from Parks. He admitted that he had had the bottles of liquor in his car and said he had purchased one of the bottles at Brownie's Cafe. Also, that he had the backjack under the front seat of the car. He stated that he had been working for the Southern Pacific and had just cashed a check for $92 and that the rest of the money found in his possession belonged to him and to his mother. Later he said that the $150 found in his hip pockets had been given to him by Mrs. Jones and that she had taken it from Parks; that she took it from Parks on the road between Indio and Coachella; that she handed him the roll and he put it in his hip pocket; that this was "the quickest place he could seem to get it as about that time we saw the officers come." He also stated that he had exchanged a $10 bill for two fives at Brownie's Cafe in Indio.

This same afternoon this officer had a conversation with Mrs. Jones. She said that after they picked up Parks they went to the Black Cat Cafe on the road between Indio and Coachella, that they then went back to Brownie's Cafe in Indio where she got some wine, and that they then went to Coachella and got stalled near the park where the officers first found them. She said that after she showed her identification to the officers she and Mason went back to Brownie's Cafe in Indio and after stopping at another place or two went back to Coachella where the officers picked them up. She first said that neither she nor Mason had taken any money from Parks "that she knew of." She then said that when they stopped at the Black Cat Cafe Mason drove down

the road with Parks in the car and returned in about fifteen minutes, and that he then had the $150 which he told her he had gotten from Parks.

The contents of the three wine bottles were analyzed and were found to contain chloral hydrate, a strong narcotic, which is commonly known as "knockout drops."

The defendants took the stand and each denied taking any money from Parks or knowing anything about it. Mrs. Jones denied that she had told the officers that Mason had told her he had taken the money from Parks. Mason admitted having told the officers that Mrs. Jones had taken the money from Parks and handed it to him, but said that this was not the truth. He then testified that when the officers first questioned him in the sheriff's office at Indio the officers hit him with a blackjack and he made the admissions in question in order to escape further abuse. He first said the officers hit him with a blackjack once or twice but as he went on he had the blows coming so fast he could not count them and, finally, he said the officers beat him over the head and face with a blackjack over a period of an hour. In explaining where he got the money found in his possession, he added a statement that he had won $40 or $50 in a crap game shortly before the officers picked him up at 2 a. m. There were a number of other inconsistencies and conflicts in his testimony. Evidence was introduced that the blackjack belonged to a man in Los Angeles and that it was inadvertently left in Mason's car. Mason's mother testified that she had given him $90 to keep for her but she was unable to be at all definite about the date when she gave it to him.

■ There is no merit in appellants' contention that the evidence is insufficient to sustain the verdicts and judgment. Mason's story about being beaten up by the officers was obviously overdone and was thoroughly and completely discredited by the testimony of a number of witnesses. The testimony given by the appellants themselves is such that it is easy to see why the jury did not accept it as true. The evidence, although many conflicts appear, amply sustains the verdicts and fully justifies the inference that the appellants were both actively engaged in the theft which occurred.

■ Several assignments of error are made in connection with the admission of evidence. It is first urged that prejudicial error appears in that the court permitted testimony

containing an inference of prostitution on the part of Mrs. Jones. This came out incidentally and, in fact, was first mentioned by Mrs. Jones. When she was being questioned on the afternoon of September 3d, the officer asked her why she got out of the car at the Black Cat Cafe, about which she had been telling, and her answer indicates that it was for the purpose of prostitution. While she was on the stand she was asked on cross-examination whether she had not told the deputy district attorney that she had obtained certain money from a soldier. She denied this. Later, a matron in the county jail testified that she heard Mrs. Jones tell this attorney that she had procured this money from a soldier. No objection was made at any time this matter was mentioned. Conceding that it would have been better if the last two references thereto had been omitted no prejudicial error appears.

It is next urged that it was error to permit the officer to testify that he found a blackjack in Mason's car when the appellants were taken into custody. It was one of the circumstances surrounding the arrest and was admissible as such. No contention was made that the blackjack had been used in connection with taking the money from Parks. Apparently, the presence of the blackjack was relied upon by Mason in claiming that he was beaten with such an instrument.

It was further argued that the court erred in allowing the admission into evidence of the three bottles of wine found in Mason's car. It is claimed that the car was searched when the officers first found the car parked near the park in Coachella at eleven o'clock p. m., that the wine was not then found, and that having been placed in the car after that time it could have had nothing to do with this case. The officers involved testified that no search of the car was made at that time. Parks at that time showed evidence of having been drugged and the fact that these bottles, containing such a drug, were found in the car in question less than three hours afterward was admissible under the general circumstances appearing. The further contention that the court erred in giving an instruction leaving the weight and effect of this evidence to the jury, and in refusing a more specific instruction in this regard which was asked for by the appellants, is without merit.

The only other point raised is that the court erred in receiving in evidence "the alleged confessions and/or admis-

sions of the defendants.'' The statement signed by Mason was not offered in evidence. The conversations between the officers and the appellants immediately after and shortly after they were arrested were clearly admissible.

No prejudicial error appears and a reading of the entire record neither indicates nor suggests that a miscarriage of justice has occurred.

The judgment, as it relates to each appellant, is affirmed.

Marks, J., and Griffin, J., concurred.