STATE OF SOUTH DAKOTA,
Respondent, v. NORMAN, Appellant

(31 N. W.2d 258.)

(File No. 8952. Opinion filed February 25, 1948.)

**Martens & Goldsmith** and **J. F. Olsen,** all of Pierre, for Appellant.

**Sigurd Anderson,** Atty. Gen., **Charles P. Warren,** Asst. Atty. Gen., and **K. J. Morgan,** State's Atty., of Gettysburg, for Respondent.

SMITH, J. The defendant was convicted of the offense of larceny. The serious question presented on appeal is whether the trial court erred in refusing a new trial because of the misconduct of the state's attorney.

The defense was charged with the larceny of a calf of one George Allerdings. It was described as a long yearling heifer, red with white face and a red patch around the right eye, weight of about 585 pounds. It was in the pasture with Allerdings' other cattle on or about the 17th of June, 1946, when Allerdings left home. When he returned on the 24th his boys reported the heifer missing. After some inves-

tigation Allerdings found an animal in the herd of one Duncan which he, his wife, and boys identified as the missing calf. The animal so identified was purchased by Duncan from defendant at a sale at Gettysburg, South Dakota, on July 15, 1946, some twenty-five miles from the farms where Allerdings and defendant resided as neighbors. This animal carried defendant's brand on its right hip, and a portion of its left ear was missing. The Allerdings animal had neither a brand nor an earmark when lost. Duncan did not notice the condition of the ear at the time of purchase but he did notice that the brand was not completely healed. Allerdings testified that he saw the animal in July at Duncan's and that the brand was then healed. All of the Allerdings claimed the animal had been a pet of one of their boys, and were very sure of their indentification. On the other hand the defendant testified that he had purchased the animal and another calf from one Hans Vickers in the general vicinity in October 1945 and branded it in April 1946. His boy testified that his father had slit the left ear and it had frozen off. The defendant, his wife and his boy testified to defendant's ownership of the calf and that it had been a pet of the six-year old boy.

Pictures of the heifer were taken in the Duncan pasture and were received in evidence. Because of the peculiar marking of the critter and the over-all circumstances, it is improbable that the conflict of testimony arose from the mistaken identity. One set of these witnesses testified falsely. If the animal is Allerdings' heifer, the defendant is undoubtedly guilty of larceny.

The state called a special agent of the Attorney General with a broad experience in law enforcement. He was examined in reference to a conversation had with defendant in the presence of the sheriff after the arrest. The question was: "What was the conversation?" To which he made answer: "Why the first thing that Norman wanted to do; he wanted to know if he can settle it some way; he said it must be some mistake and I said, 'Well, from what I have heard that is kind of an old alibi of yours, and I don't think you can settle this deal.'" On cross-examination by defend-

ant's counsel the record reveals the following questions and answers:

"Q. Now Floyd, Ray said he wanted to know if he could not settle it some way, that there must be some mistake? A. That is right.

"Q. And you told him you thought that was kind of an alibi, is that right? A. Yes, that is right.

"Q. At that time had you heard the facts in the case? A. No, at that time I had heard about this other deal, that is the reason I made the remark that I did."

Counsel for the defendant did not ask to have any part of the answers of this witness stricken.

Thereafter the members of the Allerdings family and Duncan were called to testify to the loss and identification of the Allerdings heifer. Then a witness by the name of Roy Stoner was called and during his examination the state's attorney said, "Now, I am going to ask you, Mr. Stoner, if Mr. Ray Norman branded an 'N' on any of your cattle this past year?" Defendant's counsel said, "That is objected to on the ground it is not involved within this action and it constitutes more than one offense and it is incompetent, irrelevant and immaterial and prejudicial to this Defendant." The objection was eventually sustained. As the witness left the stand and after the objection had been sustained, defendant's counsel said, "The Defendant, at this time, excepts to the question of the State's Attorney as misconduct and prejudicial to the Defendant in the trial in this case, in reference to any other brand or any other animals than that involved in this action."

Thereafter and notwithstanding the ruling of the trial court upon the objection, the cross-examination of the defendant by the state's attorney included the following:

"Q. Did you ever put any brand, during the year of 1946, on any other cattle, other than your own? A. No, sir.

"Q. Did you, on one occasion, put an 'N' brand on a calf that belonged to Roy Stoner? A. No, sir.

"Q. Did you, on one occasion, sell one of Roy Stoner's calves here during the last summer? A. That is right."

Thereupon counsel for the defendant said, "That is objected to on the ground that it refers to another and different offense from that charged in the Information here, and constitutes mis-conduct and is prejudicial to the Defendant and is incompetent in this action, and not involved here; and we move that the answer be stricken·until this objection is ruled upon." The answer was stricken and the objection sustained.

Counsel for the defendant did not at any time request a cautionary instruction, and the court thereafter took no action on its own motion.

The alleged misconduct appears in the settled record · in affidavits presented to the trial court upon a motion for new trial. Cf. State v. Burmeister, 65 S. D. 600, 277 N. W. 30; State v. Degner, 59 S. D. 539, 241 N. W. 515; State v. Wilcox, 48 S. D. 289, 204 N. W. 369; Wolff v. Stegner, 59 S. D. 231, 239 N. W. 181; and Tufty v. Sioux Transit Co., 70 S. D. 352, 17 N. W.2d 700. Also see State v. Kaufmann, 22 S. D. 433, 118 N. W. 337. As indicated, the defendant was convicted and his motion for a new trial was denied.

■ Proof of the commission of independent and disconnected offenses is generally not admissible to establish the commission of the offense charged. State v. Hanks, 55 S. D. 63, 224 N. W. 946; State v. Degner, supra; State v. Mitchell, 61 S. D. 147, 246 N. W. 635; and 22 C. J. S., Criminal Law, § 682. The Attorney General does not contend that the question of the state's attorney was justified because the testimony he sought to elicit was admissible under any exception to the foregoing rule. To ask such a question under the circumstances was misconduct, State v. Mitchell, supra, and such misconduct will generally result in a new trial because its influence upon the jury cannot be overcome by court or counsel.

In State v. Hanks, supra, [55 S. D. 63, 224 N. W. 948] we quoted with approval from Paulson v. State, 118 Wis. 89, 94 N. W. 771, as follows:

" 'In a doubtful case even the trained judicial mind can hardly exclude the fact of previous bad character or criminal tendency, and prevent its having effect to swerve such mind

toward accepting conclusion of guilt. Much less can it be expected that jurors can escape such effect.' "

A similar statement was made by Mr. Justice Lehman in People v. Robinson, 273 N. Y. 438, 8 N. E.2d 25, 28:

"Admonition to disregard evidence which is stricken out is easy to give and hard to follow. Judges trained by years of experience to base decision solely upon competent evidence contained in the record are not always completely confident of their ability to disregard and remain uninfluenced by information, or even impressions, conveyed to them dehors the record. The trial judge could not by admonition cause the jurors to forget what they had been told nor could he eradicate the impression that the defendant by objections was successfully excluding proof that the defendant habitually committed larceny. It is impossible to say that it did not influence the verdict."

In State v. Williams, 11 S. D. 64, 75 N. W. 815, 817, in dealing with a different type of misconduct, it was written:

"The theory that a court can remove from the minds of a jury the effect of a statement on the part of a state's attorney referring to the failure of the accused to testify in his own behalf, by an instruction, is illusory, and not sustained by common experience. Jurors, however much they are inclined to do so, would find it difficult to efface from their minds the impression made by the remarks of counsel, and reinforced by the instruction of the court again calling to their minds the same fact, though given for the purpose of cautioning them from being influenced by counsel's remarks The only safe rule, therefore, when counsel for the state has so far overstepped his duties as to call to the attention of the jury the fact that the accused has not taken the stand, or offered himself as a witness, is to grant a new trial."

It is apparent from a review of the record that the determinative question which confronted the jury was who told the truth about the identity of the heifer pictured in the exhibits. Neither side had seen fit to call to the jury's assistance Hans Vickers, from whom defendant said he had purchased the animal. The word of family was pitted again-

st family, and, we have indicated, the circumstances refuted the possibility of an honest mistake. As bearing on this issue more than fact had been woven into the fabric of the state's case. First an experienced law enforcement officer, whom the jury might well have credited with very special knowledge about cattle rustlers, without a shadow of justification, had told of saying to defendant, "Well, from what I have heard that is kind of an old alibi of yours, and I don't think you can settle this deal." After this innuendo had been injected into the minds of the jury the state's attorney asked Stoner whether defendant had branded any of his cattle with " 'N' during that year." An objection foreclosed an answer. Thus the jury's mind was impregnated by the state's attorney with a seemingly well-founded suspicion that this was not the first time the cattle of others had been traced to defendant's possession. It would be idle to suggest that these circumstances were without influence on the minds of this jury and, as the authorities we have quoted indicate, it would be just as idle to suggest that a cautionary instruction, or any other action by either court or counsel, could so recondition the minds of the jury as to permit a fair expression of opinion on the delicately balanced fact issue presented by the evidence.

■ It is axiomatic that this court will not disturb a trial court's ruling on a motion for a new trial unless we are satisfied that it has abused the judicial discretion to which such a motion is addressed. We are persuaded that this is such a case.

■ It is the position of the state that the conduct of the state's attorney is not presented for review by the record made by counsel for defendant. Reliance is placed upon the cases of State v. Hanson, 56 S. D. 140, 227 N. W. 571, and State v. Husman, 66 S. D. 530, 287 N. W. 30, as sustaining that position. The procedure outlined in those decisions is applicable to a case involving misconduct which may be neutralized by a cautionary instruction We are here dealing with uncurable prejudice. In such a case, a new trial is the only remedy. See State v. Hanks, supra, and State v. Mitchell, supra.

The judgment and order of the trial court are reversed and the cause is remanded for a new trial.

All the judges concur.