STATE, Respondent v. McCREARY et al., Appellants

(142 N.W.2d 240)

(File No. 10191. Opinion filed May 5, 1966)

**Martens, Goldsmith, May & Porter,** Pierre, **Kerrigan, Line & Martin,** Fremont, Neb., for defendants and appellants.

**Frank L. Farrar,** Atty. Gen., **Frances Biegelmeier,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

BURNS, Circuit Judge.

The defendants, George Donald McCreary and Malcolm Morrison and his wife, Jeanine Morrison, were charged jointly and convicted of the crime of burglary in the third degree. Each was sentenced to a term of six years in the State Penitentiary.

Upon this appeal the defendants urge as grounds for reversal of the judgments the insufficiency of the evidence to support the judgments, admission in evidence of a .38 caliber pistol with serial numbers obliterated which admittedly was not used in commission of the offense charged, reception in evidence of various articles taken from the automobile occupied by the defendants after their arrest and, as defendants claim, not incidental to arrest, and reception of other articles taken in a search of the automobile under a search warrant claimed to have been obtained on an affidavit insufficient because not showing probable cause for the search.

On the winter afternoon of February 3, 1964, at about 4:30 p. m. the defendants in a Chevrolet automobile rented in Denver by defendant, Malcolm Morrison, stopped in front of a laundromat in Sisseton, the county seat of Roberts County in the extreme northeast of South Dakota. While Mrs. Morrison remained in the automobile parked in front the two men entered the laundromat and went directly to the pay telephone in a corner of the

laundromat. With the attendant standing some fifteen feet away the men in turn went through the motions of placing telephone calls which were not completed. Morrison appeared to be tink· ering with the key hole of the coin box at lower part of the telephone. McCreary picked up a newspaper and stood between Morrison and the attendant with the paper so held that she could not see Morrison at the telephone, shifting the paper as she moved to look. She suspected that they were looting the coin box and as they left after being in the building about ten minutes she wrote down the license number of the Chevrolet and called the telephone company to ask that the telephone be inspected. When she put a dime in to make the call, it sounded as if the coin dropped into an open space. Upon inspection by the repairman a short time later, he found the coin box gone. A dime was in the empty compartment.

Pursuant to a radio message the Sheriff of Marshall County, which adjoins Roberts County on the west, at about 5:45 p. m. stopped the Chevrolet answering the description broadcast to him. This was at a point about two miles east of Britton on Highway 10 and about thirty - six miles from Sisseton. McCreary was driving at the time with Morrison seated next to him and Mrs. Morrison in the rear seat.

In response to a radio message the Sheriff of Roberts County and his Deputy Johnson, arrived at the point on Highway 10 where the Chevrolet was stopped and the party had waited for about 30 minutes. They made a cursory search of the persons of the defendants presumably for weapons and placed them under arrest. The Chevrolet and the officers' cars were on the highway at the edge of an open field. The wind was causing the snow to drift. It was a typically cold winter evening in northern South Dakota. The defendants were not dressed for the weather conditions. Members of the party remaining out of the cars for a short time became uncomfortably cold.

With McCreary handcuffed in the back seat and Mrs. Morrison in the front seat the sheriff drove his car to his office in Sisseton. His deputy took Morrison in the Chevrolet and parked

it outside the sheriff's office. The defendants were taken inside and a more thorough search made of their persons. A telephone company key was found in Morrison's billfold of a type used in coin telephones in cities where the upper housing must be opened in order to take the coin box out. Before he was lodged in jail Morrison was allowed by the sheriff to go to his car for cigarettes. As he opened the front door and the light went on the sheriff saw a bag in the front which he took out. It contained nickels, dimes and quarters in total amount of $78.25 and was received in evidence at the trial.

Immediately after the defendants were searched and placed in jail the deputy sheriff searched the Chevrolet car which had been outside the sheriff's office under the control and observation of the officers at all times while booking, searching and placing the defendants in jail. In a suitcase in the trunk of the car was found a bag of rolled coins amounting to about $135.00. Also under the front seat of the car partially covered by a floor mat was a .38 caliber pistol loaded with four cartridges.

On the day following the arrests in course of a search of the highway and ditches in the Sisseton area the deputy sheriff found the coin box from the pay telephone of the laundromat in a ditch along Highway 10 about one-fourth mile east of Sisseton.

On February 5th search was made of the Chevrolet car by the sheriff under a search warrant. He found cutting pliers, a file, coin wrappers and pieces of wire. On the same day he found in his own car which had been used to convey McCreary and Mrs. Morrison, two wire hooks or picks, one under a rubber mat in front and the other between the seats. At the trial a security officer of the telephone company demonstrated how these wire hooks could be used in unlocking and relocking the lock on the pay telephone. There was testimony by an expert that tool marks inside the lock could not have been made by the key, but could have been made by the wire hooks used as picks.

As to the defendants McCreary and Morrison the facts and circumstances shown tending to connect them with the of-

fense charged are consistent with guilt and cannot be reasonably explained upon any theory consistent with innocence. But the circumstantial evidence against Mrs. Morrison does not exclude the reasonable hypothesis of innocence of the crime charged or that she was an accessory after the fact rather than an accomplice. As restated by this court recently, "The established rule in this state is that to warrant conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent." State v. Thomas, 78 S.D. 568, 105 N.W.2d 549.

In this state the distinction between a principal and an accessory before the fact in the commission of a crime has been abolished by statute. One who aids or abets in the commission of a crime, though not present, is a principal. SDC 13.0203. Mrs. Morrison was a passenger in the automobile rented by her husband which was driven by him or the defendant, Mc-Creary, and stopped in front of the laundromat on the street in Sisseton at 4:30 p. m. Because of the manner in which the offense was committed there was no need for a lookout. She at no time operated the automobile. She did not sit behind the wheel. There is no evidence that she aided or abetted in the commission of the crime in the laundromat. At most the circumstantial evidence as to wire pieces or hooks found in the sheriff's car, the wire pieces found in the suitcase used by her husband and herself, and her connection with the coin wrappers tend to show she was an accessory after the fact rather than an accomplice. "All persons who, after the commission of any felony, conceal or aid the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories." SDC 13.0203.

The distinction between an accomplice and an accessory was most recently stated by this court in the case of State v. Johnson, 81 S.D. 600, 139 N.W.2d 232 at page 236 as follows:

"An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. To render one an accomplice he must in some manner knowingly and with criminal intent participate, associate or concur with another in the commission of a crime. State v. Shields, S.D., 132 N.W.2d 384. However, something more than mere presence at the time and place where the crime is committed is required in order to make one an accomplice, and it makes no difference that the one present remained silent or even acquiesced in the commission of the offense, if he is under no legal duty to act for the prevention of the crime. 23 C.J.S. Criminal Law §786(2). If a person after the commission of a felony, conceals or aids the offender with knowledge that he has committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, he is an accessory, SDC 13.0203, but not an accomplice. State v. Phillips, 18 S.D. 1, 98 N.W. 171, 5 Ann Cas. 760."

The evidence is insufficient to support the judgment against the defendant, Jeanine Morrison.

The trial court over objections of the defendants admitted in evidence the .38 caliber pistol which was found by the deputy sheriff under the front seat of the Chevrolet automobile used by the defendants. The four cartridges which were in the gun when found were also received in evidence. A Special Agent for the Federal Bureau of Investigation was allowed to testify that upon examination of the gun at the Bureau laboratory it was found that the serial numbers of the weapon had been removed or obliterated. This was evidence tending to show the defendants guilty of a crime other than that of the crime charged. U.S.C.A. Title 15, § 902(i) makes it unlawful for any person to transport in interstate commerce any firearm from which the manufacturer's serial number has been removed, obliterated or altered and makes possession of any such firearm presumptive evidence that such firearm was transported by the possessor in violation of the statute.

■ The evidence as to the gun was part of the state's case in chief so could not have been intended for impeachment of the defendants. But even when a defendant's veracity character is an issue, the impeachment must be by showing conviction of a crime relevant to veracity character and not by circumstances tending to show commission of a crime. State v. Bechtold, 48 S.D. 219, 203 N.W. 511; Allen v. McLain, 75 S.D. 520, 69 N.W.2d 390 and cases cited.

To the average person the circumstances shown relating to the gun would be evidence of bad character of the defendants from which would be assumed that they would be more likely to commit the offense charged than persons of good character. But the defendants had not and did not put their characters in issue in their own defense. In the readable one volume work, McCormick on Evidence, § 157, the author says:

"The disfavor for receiving proof of the character of a person as evidence that on a particular occasion he acted in keeping with his disposition is strongly felt when the state seeks to show that the accused is a bad man and thus more likely to have committed the crime. The long - established rule, accordingly, forbids the prosecution, unless and until the accused gives evidence of his good character, to introduce initially evidence of the bad character of the accused. It is not irrelevant, but in the setting of jury trial the danger of prejudice outweighs the probative value."

■ In this criminal prosecution on a charge of burglary the character of the persons accused was not a fact in issue and the admission in evidence of the gun with the cartridges and the testimony as to obliteration of the identifying numbers of the gun, if for the purpose of showing bad character and a disposition to commit the crime charged, was improper. 22A C.J.S. Criminal Law § 676; 20 Am.Jur., Evidence, § 325.

■ Because of the federal statute which makes possession of a firearm upon which the identification numbers have been obliterated prima facie evidence of a crime, the evidence as

to the gun tended to show the defendants had committed a crime other than that charged. Subject to a number of exceptions, none of which is applicable here, the general rule is that evidence that the accused has committed another crime independent of, and unconnected with the one on trial, is not competent to establish the crime charged. 22A C.J.S. Criminal Law § 682. This rule was applied by this court in the case of State v. Norman, 72 S.D. 168, 31 N.W.2d 258, wherein the defendant was charged with larcency of a calf which he had sold to another with his unhealed brand on the animal. By unresponsive answers of a prosecution witness and questions put by the state's attorney it was intimated that this was not the first time the cattle of others had been traced to defendant's possession. There was suggestion of similarity in the other offenses in use of defendant's brand. In holding that this was prejudicial error the court said: "Proof of the commission of independent and disconnected offenses is generally not admissible to establish the commission of the offense charged. State v. Hanks, 55 S.D. 63, 224 N.W. 946; State v. Degner, (59 S.D. 539, 241 N.W. 515); State v. Mitchell, 61 S.D. 147, 246 N.W. 635; and 22 C.J.S., Criminal Law, § 682."

In 22A C.J.S. Criminal Law, in §§ 683 to 690 is discussed the many exceptions to the general rule as to inadmissibility of an independent and disconnected offense including acts showing identity, knowledge, intent or malice, motive, acts part of plan or system of criminal action and acts constituting continuous offenses, followed by section 691 applying the rules to prosecutions for particular offenses. The writer in section 691(7) at page 808, applies the rules to burglary in this language:

"Under the exception to the general rule, evidence of another offense is admissible in a prosecution for burglary or a similar offense when it tends to show motive, guilty knowledge, a regular or similar system, or a common scheme or plan, or modus operandi, of crime, organized and carried on by accused, or by accused and others, a material fact in the case, or to illustrate, characterize, and explain the possession of burglary tools by

accused in a prosecution for possession thereof, or to rebut a defense or theory urged by accused, or when the evidence of the other offense is intermingled with the charged crime, or where the commission of the other offense and the commission of the one charged are so interwoven as in effect to constitute one transaction."

The burglary charged was committed by stealth in the presence of the attendant in the laundromat. The gun was not used in committing the burglary. It was not a tool or even a weapon used or useful in committing the burglary as it was stealthily committed in a public place in full view of the person in charge of the room which the two defendants entered ostensibly for the purpose of making a telephone call. It was not used as the defendants drove away nor was it in evidence at the time and place of their arrest. The possession of the gun was not related to or connected with the commission of the burglary. Unlike in the case of State v. Campbell, 7 N.D. 58, 72 N.W. 935, decided by the North Dakota court in 1897, which has been called to our attention, the gun was not material or necessary as a part of the so-called res gestae in identifying the defendants and connecting them with the offense charged by a chain of circumstances. It tends to prove nothing except the bad character of the defendants and, coupled with the evidence as to obliteration of its serial number, that the defendants had committed another wholly unrelated crime. Such evidence did not tend to establish a material issue concerning motive, intent, knowledge, plan, modus operandi or other material fact in the case such as identity.

■ The possession of the gun in the defendants' automobile was not so interwoven with the commission of the offense as in effect to constitute one transaction, part of which could not be shown without showing all. Because of the strong circumstantial case against the two defendants and because it clearly appears that the defendants made no use of the gun, but committed the offense without threats or show of violence, it may be that the admission of the gun itself was not highly prejudicial. But the state over strenuous objection proceeded to show by the F.B.I. expert that the identification numbers of the gun had been

obliterated, that is, that the defendants were guilty of another wholly unrelated crime. This evidence was not competent under any of the exceptions to the general rule excluding evidence of other offenses. State v. Degner, supra; 22A C.J.S. Criminal Law § 683, and State v. Wilcox, 48 S.D. 289, 204 N.W. 369.

Reverting again to 22A C.J.S. Criminal Law § 683, we think the proper approach to the problem is well stated at page 743 as follows:

> "Notwithstanding the existence of these numerous exceptions, the general rule precluding admission of evidence of other offenses should be strictly enforced, in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. So, these exceptions should be carefully limited, and their number and scope not increased, and, if it is doubtful whether evidence of other offenses falls within any of the exceptions to the rule, it should be excluded."

A horse of like color and markings was involved in the case of Brubaker v. United States, 6 Cir., 183 F.2d 894. The defendant was convicted for violation of the Dyer Act by illegally receiving a stolen automobile. At the time of his legal arrest a search of the car and its contents was made. Two loaded revolvers were found in the defendant's suitcase. He was indicted for violation of the Federal Fire Arms Act, but was not being tried on such charge. The revolvers were received in evidence. The court wrote:

> "The presence of the revolvers in his suitcase had no bearing whatsoever upon the charge of receiving the stolen car. * * * No ground for impeachment was laid and the guns were offered and admitted in evidence as part of the Government's main case and before it was known that Brubaker would himself testify. The receipt of this evidence constituted error and error so highly

prejudicial that no course is open to us except to reverse the judgment and remand the cause to the District Court for a new trial."

Because the case must be retried as to the defendants Mc-Creary and Malcolm Morrison, we come to the questions raised as to the validity of the searches made of the defendants' automobile. The first search was made without warrant immediately after the persons of the defendants had been searched and they had been placed in jail. The question presented is whether such search of the automobile was reasonably incident to the legal arrest.

■ The protection afforded by the Constitutions of the United States and this state to persons and their effects is against unreasonable searches and seizures. U.S. Const., Amend. Art. 4, Constitution of South Dakota, Art. VI, § 11. A search of an automobile must meet the test of reasonableness under these provisions of our constitutions. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; State v. Merrill, 52 S.D. 129, 216 N.W. 874.

It is the well-established rule that one's house or room cannot lawfully be searched without a search warrant, except as an incident of a lawful arrest therein. 47 Am.Jur., Searches and Seizures, § 19; Agnello et al. v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. Such search must be made at the place and time of the arrest. But there is a difference between search of a house or a room and search of an automobile. The search of a house is a search of a place, but the search of an automobile is a search of an effect. In the present case the thing to be searched was the car and not a place whereat the arrest was made.

Here the defendants were arrested in the automobile on a public highway in the country in the late afternoon of a cold winter day. Because of prevailing weather and road conditions the defendants and their car were taken directly to the sheriff's office for search of their persons and the automobile. First a search of the persons of the defendants was made. Thereupon

without any delay the automobile was searched by the officers. It had been under their immediate control and surveillance from the time it was stopped on the highway.

In Preston, supra, the court said: "Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar." There the court stated the facts surrounding the arrest and search as follows: "The officers arrested the three men for vagrancy, searched them for weapons, and took them to police headquarters. The car, which had not been searched at the time of the arrest, was driven by an officer to the station, from which it was towed to a garage. Soon after the men had been booked at the station, some of the police officers went to the garage to search the car * * *". Under such circumstances the court held "the search was too remote in time or place to have been made as incidental to the arrest."

This is not a case where premises searched were separated from the place where the arrest was made nor a case where a place of abode was searched after an arrest was made and the person arrested removed therefrom. Here the need to clear the highway and to protect the defendants from the elements as well as to afford the officers better conditions for the search, in the exercise of good judgment, reasonably required the brief delay of a more thorough search of the persons and effects of the defendants until the sheriff's office was reached. Unlike in the Preston case the car was not removed to a place beyond the immediate surveillance of the arresting officers with a considerable lapse of time from arrest to the search. Applying the test of reasonableness under the Fourth Amendment and Article VI, § 11, of our State Constitution to the facts of the present case, we hold that the first search of the defendants' automobile without a warrant was incidental to the legal arrest.

The second search of defendants' automobile was made under a search warrant two days following their arrest. Upon this

search incriminating tools and articles were found which were received in evidence over defendants' objections attacking the validity of the warrant. To the historical summary of the South Dakota law relating to search warrants stated by the court in State v. Lane, 76 S.D. 544, 82 N.W.2d 286, it is now necessary to make an addendum based upon the changing concept of the operation of the Fourth and Fourteenth Amendments upon the states as formulated by the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

In 1949 the United States Supreme Court in Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, held that in a prosecution in a state court for a state crime, the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure. Relying upon the Wolf case this court in Lane, supra, held valid the second paragraph of SDC 1960 Supp. 34.1102 originally enacted as Section 2, Chapter 96 of the 1935 Session Laws, reading as follows:

"All evidence obtained which would have been admissible in evidence if the articles or personal property searched for and seized had been lawfully searched for and seized upon a valid and legal search warrant legally issued, shall, nevertheless, be admissible in evidence, notwithstanding any defect, insufficiency, or irregularity in the issuance of such search warrant, or the affidavit supporting the same, the same as if such evidence had been obtained upon a good and valid search warrant, legally and properly issued."

In Mapp, supra, decided by the United States Supreme Court on June 19, 1961, the court overruled the Wolf case saying:

"Today we once again examine Wolf's constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all per-

sons as a specific guarantee against that very same un-
lawful conduct. We hold that all evidence obtained by
searches and seizures in violation of the Constitution is,
by that same authority, inadmissible in a state court."

 The second sentence of SDC 1960 Supp. 34.1102 was
held to be in violation of Art. VI, § 11 of our Constitution in the
Lane case. Consistent with the developing concepts of constitu-
tional rights as stated in Mapp and other recent decisions of the
United States Supreme Court, we now hold that the second para-
graph of SDC 1960 Supp. 34.1102 violates the due process and
search and seizure clauses of the State Bill of Rights designated
as § 2 and § 11, Article VI of our Constitution.

It was not enough that the search was made under color
of the authority of a search warrant issued by a magistrate; to
be a reasonable search the warrant must have been valid. The
warrant was valid only if there was probable cause for its is-
suance appearing to the magistrate from the supporting affidavit.
U.S.Const. Amend., Art. 4, Article VI, § 11, Constitution of South
Dakota.

The affidavit for search warrant was signed by the sheriff
of Roberts County who had participated in the arrest of the de-
fendants and the search of their persons and the automobile at
the time of arrest. He stated in the affidavit that he had reason
to believe and did believe that the defendants had in their pos-
session coins, money, burglary tools and weapons in the auto-
mobile described by model and Colorado license number located
in the garage of the Roberts County jail. He further stated that
he believed that the defendants intended to use such articles for
the purpose of committing burglary and larceny, that they were
presently being held on a charge of burglary and that "On pre-
liminary hearing held in Circuit Court February 4, 1964, George
Donald McCreary, Malcolm Morrison and Jeanine Morrison were
bound over to Circuit Court on charge of Burglary of a pay phone
at the Sno - White Laundromat and burglary tools and other
items above are believed in their car." Although the sheriff used
the language of the printed form to say that the grounds of his
belief was information from persons who claimed to have per-

sonal knowledge of the facts, it must have been apparent to the magistrate that the sheriff had personal knowledge of most of the facts recited.

Appellants in their attack upon the affidavit rely upon Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. The warrant in that case was issued for search of the petitioner's home upon an affidavit reciting that: "Affiants have received reliable information from a credible person and do believe that * * * narcotics and narcotic paraphernalia are being kept at the above, described premises for the purpose of sale and use contrary to the provisions of the law." It seems clear as held by the court that such "affidavit did not provide a sufficient basis for a finding of probable cause * * *." But in the opinion by Mr. Justice Goldberg some of the principles which we think are applicable to the present case were stated as follows:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' Giordenello v. United States, supra, 357 U.S. [480] at 486, 78 S.Ct. [1245] at 1250 [2 L.Ed.2d 1503]; Johnson v. United States, supra, 333 U.S. [10] at 14, 68 S.Ct. [367] at 369 [92 L.Ed. 436], or, as in this case, by an unidentified informant."

Mr. Justice Goldberg also wrote the majority opinion in the more recent case of United States v. Ventresca, 380 U.S. 102,

85 S.Ct. 741, 13 L.Ed.2d 684, involving search of a house for an illegal distillery. The Circuit Court of Appeals has held the supporting affidavit insufficient to show probable cause "because it read the affidavit is not specifically stating in so many words that the information it contained was based upon the personal knowledge of Mazaka (affiant) or other reliable investigators." After reviewing the cases Mr. Justice Goldberg wrote:

> "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. * * * This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aguilar v. State of Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, 362 U.S. [257], at 270, 80 S.Ct. [725], at 735 [4 L.Ed.2d 697]."

██ ██ Although the affidavit in this case was not as long and detailed as the affidavit in the Ventresca case, underlying circumstances upon which the sheriff's belief was based were set out including the arrest and holding of the defendants

by the sheriff for burglary, the sheriff's possession of their car in garage of the County jail and the fact that they had been formally charged with burglary and upon preliminary hearing had been held for trial, tantamount to stating that the committing magistrate had found that the burglary charged had been committed and that there was sufficient cause to believe the defendants guilty thereof. The affidavit is not a model to be followed in other cases. The records show that the sheriff had personal knowledge of facts fully sufficient to establish probable cause. In addition he could have summarized the showing made at the preliminary hearing particularly with reference to the articles already found in the defendants' automobile. Although a time saving device, the printed language of the commercial form of affidavit made the sheriff seem to say on information and belief what he in fact knew firsthand. Hearsay, although accepted because of the exigencies of a case, is never a good substitute for statements based on personal knowledge. Shortcuts across constitutionally protected areas are not to be encouraged. But upon the facts peculiar to this case, we find the affidavit sufficient for a determination by the magistrate of probable cause for issuance of the warrant for search of the automobile.

The judgments are reversed with direction to dismiss as to the defendant, Jeanine Morrison.

RENTTO, P. J., and ROBERTS and HOMEYER, JJ., concur.

HANSON, J., dissents.

BURNS, Circuit Judge, sitting for BIEGELMEIER, J., disqualified.

HANSON, Judge (dissenting)

The loaded pistol was found in the possession of defendants immediately after the commission of the crime of burglary. The weapon is not the fruit of an unlawful search and seizure. It was found by the officers while conducting a lawful search and seizure following arrest. In my opinion this weapon was relevant and admissible in evidence. For that reason I am unable to concur in the reversal of the judgments of conviction against the defendants, George McCreary and Malcolm Morrison.

"Ordinarily, evidence of the arrest of the accused, and of the attending circumstances, is relevant and admissible where such circumstances logically tend to connect accused with the perpetration of the crime, and testimony as to an incident which was part and parcel of the res gestae of the arrest may be relevant. It may be relevant to introduce testimony as to the place, time * * * and the property found in his possession." 22A C.J.S. Criminal Law § 628, pp. 472, 473.

More specifically it is written in 22A C.J.S. Criminal Law § 611, p. 418 that:

"Evidence is relevant to show that the accused owned, possessed, or had access to any articles with which the crime was or might have been committed."

Likewise see I Wigmore on Evidence § 83, p. 512, wherein it is stated that "the likelihood of a person doing or not doing an act in question * * * his possession (or lack) of the appropriate means or tools, are usually of sufficient probative value to be admissible."

As applied to the facts in this case the following statement appearing in Vol. II, Wigmore on Evidence, § 238, p. 33, is particularly applicable:

"The kinds of conduct which may evidence a design are innumerable in their variety. Any act, which under the circumstances and according to experience as naturally interpreted and applied would indicate a probable design, is relevant and admissible. It is true that the design indicated may be too indefinite to be itself relevant as evidence of an act (ante, § 106); but this does not affect the relevancy of the conduct to evidence that design.

"Most evidence of this sort needs no judicial ruling to determine its relevancy, and the precedents deal with only a limited number of the possible uses of such evidence. The discretion of the trial Court should control

in all these cases; it is impossible to lay down any general rule that will be definite enough to serve as a solution for each instance; and it is poor policy to attempt in a Supreme Court to pass upon the probative value of each given piece of conduct.

"Any attempt to reconcile all the rulings is hopeless; there is no reason why they should be treated as binding precedents. The question is always one of experience and common sense in each case. The general judicial attitude is shown in the following passage:

"1878, BREWER, J., in State v. Adams, 20 Kan. [311] 320 (burglary; the four defendants held a meeting to arrange for the crime; a bar of iron and a pair of pincers were alone necessary, and these the defendant brought; the facts were admitted of the defendant having taken a carpenter's brace from a store and hidden it; a third person removed it, and the defendant never used it); 'Would not the act be one tending to show preparation,—a preparation made fruitless by the unexpected act of another? Could it not be shown that the one charged with homicide immediately prior thereto was providing himself with several weapons, though one only was used? \* \* \* If one weapon he stole, another he borrowed, and one (his own) he put in order, would proof as to the first be incompetent while evidence as to the others was admissible? \* \* \* If no act or conduct of the defendant could be shown unless the motive therefor or the connection between it and the crime were made indisputably clear, the range of inquiry would be limited and narrow. It is enough that the act has an apparent or probable connection with the crime, and then the motive of the defendant and the weight of it as testimony are to be considered by the jury. \* \* \* Must it be affirmatively shown that each weapon was procured with reference to the homicide before evidence concerning its procurement is competent? Or are the facts concerning all to be put in evidence, leaving their weight to be determined by the jury?'; and the latter is approved.

"The acquisition or possession of instruments, tools, or other means of doing the act, is admissible as a significant circumstance; the possession signifies a probable design to use; the instruments need not be such as are entirely appropriate, nor such as were actually put to use."

Our sister state of North Dakota decided a similar question in the case of State v. Campbell, 7 N.D. 58, 72 N.W. 935, in which the defendant was charged with and convicted of the crime of burglary of a combination store and residence. The owner of the store heard a noise at night and caught a view of some retreating figure. There was snow on the ground and a posse following the tracks found defendant under the driveway of an elevator in the next town. On his person, when arrested, were cartridges, a chisel and a punch. The day after defendant's arrest a revolver was found under the driveway where he had been hiding. There was also another punch found outside the burglarized store and a brace, two drills and a file were found inside the store. The tools were identified as tools taken from a blacksmith shop in the town of Leonard. Defendant objected to the introduction of the tools and the revolver, but they were admitted into evidence by the trial court. The Supreme Court of North Dakota said:

"The chisel found in defendant's possession when arrested, and the punch found on the sill of the driveway, within reach of which the defendant was found when arrested, were, in our opinion, proper evidence to go to the jury under the circumstances we have detailed, as tending to show defendant's connection with the commission of the crime. The chisel might have been used in prying open the outside door of the store, and the punch might have been used in producing the indentations which were found to have been made upon the inner door of the safe. Whether these articles were so used or not was a question for the jury to consider, in connection with the testimony offered by the defendant whereby he seeks to account for his possession of the chisel."

With reference to the revolver which was found the day after defendant's arrest, the Court went on to say:

> "This revolver belonged to the defendant, and was found under the driveway on a sill, and near where he was when arrested. Under these circumstances we think the jury were properly allowed to consider all the facts connected with the exhibits put in evidence, and where they were found, as bearing on the question of defendant's connection with the crime."

See Lipscomb v. State, 162 Neb. 417, 76 N.W.2d 399; People v. Gambino, 12 Ill.2d 29, 145 N.E.2d 42; People v. Mason, 65 Cal. App.2d 5, 149 P.2d 742.

Fortunately for the attendant at the laundromat and the arresting officers the loaded gun which defendants brought with them to the scene of the crime was not used either to commit the offense or to accomplish their getaway. However, this weapon might have been so used and was relevant and admissible.

The F.B.I. evidence showing obliteration of the serial numbers on the revolver constituted nothing more than harmless error. It added nothing. The jurors by their own inspection could observe that the serial numbers had been obliterated. If evidence is otherwise competent, it is not rendered inadmissible merely because it might possibly show defendant guilty of another crime. The crime defendants claim jeopardized their rights (U.S.C.A. Title 26, § 5843) did not apply to pistols and revolvers.