The PEOPLE of the State of South Dakota in the Interest of W. G. R. H., a child.

No. 11969.

Supreme Court of South Dakota.

July 14, 1977.

Joseph Neiles, Asst. Public Defender, Rapid City, for appellant W.G.R.H.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for respondent State; William J. Janklow, Atty. Gen., Pierre, on the brief.

MUNDT, Circuit Judge.*

This appeal arises from a conviction of W.G.R.H. of the charges of (1) tampering with a motor vehicle in violation of SDCL 32–4–4, alleged to have been committed on January 17, 1976, and (2) first degree arson in violation of SDCL 22–33–1, alleged to have been committed on February 7, 1976. From the dispositional order of the Circuit Court, Juvenile Division, Seventh Judicial Circuit, dated March 5, 1976, this appeal follows.

Appellant was a 15-year-old Indian boy, living with his foster parents, Mr. & Mrs. Leonard Fiddler, at 614 Paha Sapa Drive, in Rapid City, South Dakota, at the time this action was commenced. Also living at this address were Hanna Red Horse, Joanne Jumping Elk, and Derrick Elk Head. The Department of Social Services, Division of Human Development, had custody of the child W.G.R.H., since 1970, through a dependency and neglect action.

On February 9, 1976, the child was arraigned on both charges. He requested an attorney, and an attorney of the Pennington County Public Defender's Office was appointed by the court to represent him. On February 19, 1976, an evidentiary hearing was held on the charge of first degree arson. Prior to the commencement of this hearing appellant admitted the charge of tampering with a motor vehicle. At the close of the evidentiary hearing, the court entered an order declaring the child a delinquent upon his admission to the charge of tampering with a motor vehicle, and upon a finding of guilt, beyond a reasonable doubt, on the charge of first degree arson.

By Assignment of Error Number 1, appellant contends that the court erred in accepting his plea of guilty to the charge of tampering with a motor vehicle. He says that the trial court, as appears from the record, did not advise him of his constitutional rights, or advise him that an admission to the petition would waive those rights. The state does not deny that the court failed to advise appellant of all of his constitutional rights, but says accepting a plea of guilty, without canvassing the accused and determining that the plea was voluntarily made, does not constitute reversible error.

The state contends that in determining whether a guilty plea is acceptable by a trial court, insofar as a juvenile is concerned, the standard procedural due process can be different from a defendant in a criminal trial since the juvenile court operates under a parens patriae theory, and only has to insure that the "essentials of due process and fair treatment" are accorded to juveniles.

* In accordance with SDCL 16–1–5.

With reference to the duty of a judge to inform the juvenile of his constitutional rights, SDCL 26–8–22.1 provides:

"At his first appearance before the court, the child and his parents, guardian, or other custodian shall be fully informed of their constitutional rights and legal rights, including the right to be represented by counsel at every stage of the proceedings."

SDCL 26–8–22.5 provides:

"At the adjudicatory hearing * * * the court shall first consider only whether the allegations of the petition are supported by evidence beyond a reasonable doubt in cases concerning delinquent children or children in need of supervision * * *."

SDCL 26–7–11 provides:

"At every proceeding under chapter 26–8 shall be in the interest of the child and the state, but with due regard to the rightful parents and others directly interested; and in any proceeding the child shall be dealt with, protected, and cared for as a ward of the state."

SDCL 26–8–1.1 provides:

"Whenever the court is informed by a law enforcement officer or any other person that a child is, or appears to be, within this court's jurisdiction, as provided in this chapter and chapter 26–7, the court shall make a preliminary investigation to determine whether the interests of the public or of the child require that further action be taken. * * *"

Until recently there was no case law requiring that constitutional rights afforded to all adult defendants, in criminal cases, also extended to juveniles under the juvenile court system. Juvenile court proceedings were considered to be noncriminal, and therefore criminal constitutional rulings did not apply. That theory was based on the premise that juveniles were wards of the state and not subject to punishment. As wards of the state they were not fully responsible for their conduct and were presumed to be capable of full rehabilitation. This resulted in a nonadversary proceeding, presided over by a judge who was looked upon as a father rather than an impartial arbiter of justice, and who would protect the interest of both the child and the state. See "South Dakota Juvenile Procedures Ten Years After Gault: Still Unconstitutional?" by Thomas E. Klinkel, South Dakota Law Review, Volume 22, Number 1, page 56.

The case of *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527,

"established the cornerstone for today's juvenile justice system. * * * The Court declared that 'neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.' * * *

" * * * The Court went on to apply the guarantees of the due process clause of the fourteenth amendment to the particular facts of the *Gault* case, holding that in state proceedings where a finding of delinquency could result in commitment to a state institution the 'essentials of due process and fair treatment' are required.

"While the Court observed that perhaps not *all* constitutional rights recognized for adults must be accorded to juveniles, at least the following rights are mandatory: (1) *Notice*, in advance of court proceedings and of a nature which would be deemed constitutionally adequate in any other civil or criminal proceeding; (2) Notification of the *right to counsel* and that counsel will be appointed if the juvenile cannot afford one; (3) the *privilege against self-incrimination*; and (4) the right to *confrontation and cross-examination* of witnesses.

\* \* \* \* \* \*

" * * * *Gault* involved an appeal from a state court and hence the four rights held applicable to juvenile proceedings became mandatory for all states under the fourteenth amendment." S.D. Law Review, Vol. 22, No. 1, at 58.

By virtue of our law (SDCL 26–7–11 and 26–8–1.1) we apparently are committed to the "parens patriae theory." There appears to be no reason, however, why the four rights enumerated in *Gault* would not be

equally applicable to the "parens patriae doctrine."

It is not essential to this appeal whether or not we find that the court failed to apply the essentials of due process and fair treatment in accordance with the *Gault* decision with respect to accepting the guilty plea. If appellant is guilty of either offense with which he is charged, the trial court was justified in finding the child delinquent. We therefore turn our attention to the question of whether the evidence is sufficient to support the verdict of guilty on the charge of first degree arson.

The evidence in this case is largely circumstantial. " '[W]here circumstantial evidence alone is relied on as to any one or more of the essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged.' " *State v. Best*, 1975, S.D., 232 N.W.2d 447 at 457.

"To warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. * * * However, the last phrase of this rule does not mean that the evidence must be such as to exclude every possible hypothesis of innocence; rather, it requires only the exclusion of reasonable hypothesis of innocence." *State v. Scott*, 1969, 84 S.D. 511, 516, 173 N.W.2d 287, 290.

The state's evidence shows conclusively that the two fires, one in the kitchen, and the other in one of the bedrooms, in the Leonard Fiddler dwelling, located at 614 Paha Sapa Drive, Rapid City, South Dakota, were man made, and that an act of arson had been committed by someone.

The night of the fire, February 7, 1976, Gene Red Horse and his five-year-old grandson were in the house watching television until about midnight, at which time they went to bed. No one else was in the house until about 1:30 in the morning when Derrick Elk Head, a fifteen-year-old Indian boy, and a cousin of appellant, returned home and went to bed. He was awakened about 2:30 a.m., when appellant came home in an intoxicated condition. He started throwing things around in the house. These activities awakened the grandfather and grandson, causing them to leave the house, and go to a granddaughter's home, because the grandfather was afraid appellant was going to strike him. Appellant continued his destructive activities, breaking all but two windows in the house. Derrick told appellant to quiet down but when he did not, Derrick also left the house and went to a friend's home, about two blocks away, and went to sleep there. Later he got up and noticed there was a fire at the Fiddler residence. He didn't know how long he had been asleep, but believes from a half hour to an hour.

The fire was discovered about 4 a.m., by two patrolmen, when they noticed smoke coming out of the house. When they arrived at the home they saw a little flame in one of the bedrooms and a great deal of smoke. One of the patrolmen went around to the back door and saw appellant coming from the direction of the door. The patrolmen described appellant as being in an intoxicated condition and saying that his grandfather was in the house, and adding that his mother had gotten drunk and set fire to the house. A car was parked near the back door. When the patrolmen talked to him, appellant was standing in front of the car, about 15 feet from the back door. The right rear door of the car was open, and a five gallon gasoline can was on the right hand side of the back seat.

The deputy fire marshall picked up from the kitchen floor a book of matches that bore an Olympia beer advertisement. Later when appellant was taken into custody a similar type match book was found on his person. The deputy fire marshall observed that the fire in the bedroom was definitely set by a flammable liquid. He also noticed the gasoline can in the car, and that there

was a small amount of gasoline in the bottom of the can.

It also appears from the evidence that appellant and Derrick Elk Head occupied the same bedroom, being the one in which the fire had been set. Appellant's clothing and other personal property were kept in another bedroom. Nothing was burned in this bedroom, and most of appellant's things were still there, except some clothing and shoes, which were missing.

We believe the state has established by circumstantial evidence, beyond a reasonable doubt, that appellant committed the crime of first degree arson, on February 7, 1976. He was the only person in the house when Derrick left. He was also the only person at the house when the patrolmen arrived. He was in a destructive frame of mind when he returned to the house about 2:30 that morning. The fire was small and of recent origin. Derrick noticed the fire a half hour to an hour after he arrived at his friend's house.

Appellant's concern about his grandfather being in the burning building, when he knew that his grandfather had left the house after appellant came home, suggests that he was possibly trying to explain his presence at the scene of the fire. His statement that his mother was drunk and had set the fire seems to indicate a guilty conscience that he knew the fire had been set. Some inferences may also be drawn from the book of matches and the gasoline can. Whether by design or otherwise, appellant's personal possessions were not damaged by the fire, because they were not in the bedroom where the fire was set.

We believe the facts and circumstances shown connect appellant with the offense of first degree arson, and are consistent with his guilt, and cannot be reasonably explained upon any theory consistent with innocence. *State v. McCreary,* 1966, 82 S.D. 111, 142 N.W.2d 240.

The judgment of the lower court is affirmed.

All the Justices concur.

MUNDT, Retired Circuit Judge, sitting for ZASTROW, J., disqualified.